GULOTTA, Judge.
In this automobile accident case, defendant complains that $28,000.00 in general *8 damages and $1,581.00 in special damages [1] are excessive. The sole issue, therefore, is quantum.
According to defendant, plaintiff’s soft tissue cervical and shoulder injuries required treatment for a period not in excess of two months, and plaintiff failed to establish a causal connection between the automobile accident and lower back pain resulting in a 5% disability. Defendant claims the low-back pain resulted from pre-exist-ing degenerative arthritis aggravated by a subsequent mopping incident that occurred three weeks after the September 22, 1977 automobile accident. Concerning the $500.00 special damage award for loss of plaintiff’s vehicle, defendant argues there was insufficient evidence in the record to establish the amount of property damage.
Our examination of the facts and circumstances in the record leads us to conclude that the $28,000.00 general damage award is excessive. We therefore reduce the amount from $28,000.00 to the sum of $8,000.00. We find no basis, however, to disturb the $500.00 award.
On the day following the accident, Sue Howell was seen by Dr. Emile Bertucci. Her complaints at that time were soreness and pain over her forearms, pain over the right side of her neck and pain in the right hip. Examination revealed tenderness and muscle spasms over the para-verterbral muscle in the back of the neck and particularly on the right side. Plaintiff exhibited on that first examination tenderness and muscle spasm also over the uppermost part of the right trapezius muscle and over the backside of the right shoulder. She exhibited pain in raising her right arm and on motion of her right shoulder. Plaintiff also suffered from tenderness over the chest wall and over the right hip, particularly noticeable in rotation of the right hip. Dr. Bertucci’s diagnosis was that this plaintiff had sustained an acute cervical strain, including primarily the muscles of the right side; strain of the uppermost portion of the right trapezius muscles between the neck and shoulder; a contusion and/or strain of the musculature of the right chest wall, and a contusion or strain of the ligaments about the right hip. Muscle relaxants, pain killers and physical therapy were prescribed for the cervical area.
Between September 23, 1977 and November 11, 1977, plaintiff was seen on nine occasions, either by Dr. Bertucci or his associate. She was last examined by Dr. Ber-tucci and discharged on January 6, 1978, after undergoing twenty-six physical therapy treatments between September 23 and the date of discharge. When discharged, Howell was relatively asymptomatic except that she complained of slight tenderness over the lumbosacral area. It was Dr. Ber-tueci’s opinion that the lower back problem, which he diagnosed as an acute lumbo sacral strain, resulted from the September 22, 1977 automobile accident. Although her complaints commenced approximately three weeks post accident, Dr. Bertucci was of the opinion that a reasonable medical certainty exists of a causal relationship between the lower back pain and the accident.
Dr. Irving Redler, an orthopedic surgeon, saw plaintiff at defendant’s request on April 17, 1978. At that time plaintiff complained of pain in the lower back when she bent backward or when pressure was exerted. It was Dr. Redler’s opinion that the lower back pain resulted from the degenerative changes in the lumbo sacral area that pre-existed the automobile accident. When advised that the lower back pain did not manifest itself until approximately three weeks after the accident, Dr. Redler stated “this would almost be near the outer limits of cause and effect between injury and the development of symptoms.” He indicated that the post-accident mopping incident could have induced strain on the lower part of the back. Nonetheless, he concluded that a trauma caused the onset of arthritic symptoms resulting in the soft tissue injury. It was his opinion that the recovery period *9 for such an injury was approximately six to eight weeks and that plaintiff’s disability amounted to 5%. He added that even without the accident having occurred, the disability would have been the same, approximately 5%.
Dr. Stuart Phillips, also an orthopedic surgeon, first saw plaintiff on February 14, 1978. He made no physical findings upon examination of the neck area but did note abnormality in the area of the lower back. He also indicated, as did Dr. Redler, that the lower back area exhibited degenerative arthritic changes. His diagnosis was that the arthritis had pre-existed the accident, and was aggravated by trauma. According to Dr. Phillips, plaintiff’s prognosis was poor and it was likely that she would have intermittent episodes of pain upon mopping, stooping, or engaging in other activities. It was Dr. Phillips’ opinion based upon plaintiff’s history that there was reasonable medical probability that the September 22, 1977 automobile accident was the cause of the aggravation of the arthritis. He stated also that it was not uncommon for the lower back pain to manifest itself in three weeks post accident. Plaintiff was seen by Dr. Phillips on five occasions between February 14, 1978 and her discharge on February 29, 1980. His diagnosis on February 12, 1979 was “arthritis aggravated by trauma.” According to this physician, had plaintiff not suffered the trauma, the probability existed that she could have gone another ten or fifteen years with the arthritic condition remaining dormant. The 5% disability which he assessed had resulted from the aggravation.
Plaintiff testified that prior to the automobile accident she had suffered from no back pain and had been completely asymptomatic. Subsequent to the accident, her physical activities were curtailed and her ability to enjoy social activities was restricted up to and including the date of trial on March 11, 1980. Her testimony was corroborated by other witnesses.
The medical and lay evidence considered, as articulated herein, we conclude the $28,000.00 general damage award constitutes a clear abuse of the trial judge’s discretion. See Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The expert testimony establishes that plaintiff has suffered an accident related cervical and lum-bosacral strain aggravating her pre-existing arthritis in the lower back resulting in a premature 5% disability. We reduce the general damage award to the sum of $8,000.00,[2] which we deem to be the “highest point” reasonably within the broad discretion of the trier of fact. See Carollo v. Wilson, 353 So.2d 249 (La.1977).
Concerning the $500.00 special award for loss of the automobile, we find no error or abuse of discretion by the trial court. Although plaintiff could not recall if an estimate of the damage to her vehicle had been made and none was introduced, she testified that her 1968 Chevrolet, which she had received as a gift, was in good condition and free of dents prior to the accident. Plaintiff’s boyfriend testified that the vehicle had been obtained for $500.00 and another vehicle. Photographs of the car taken after the accident demon *10 strate the extensive damage that resulted when the vehicle was struck by defendant’s bus and knocked into a utility pole. It is obvious from these exhibits that the dam-; age exceeded $500.00 and, under the circumstances, we find no error in the court’s special damages for “loss of the use of the car.”
For the foregoing reasons, we reduce the general damage award from $28,000.00 to $8,000.00 and amend the judgment in favor of plaintiff, Sue Howell, and against defendant, New Orleans Public Service, from the sum of $29,581.00 to the sum of $9,581.00. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.

. The special damages include $500.00 for loss of use of plaintiffs automobile and $1,081.00 in medical expenses. Defendant does not contest the amount of medical expense, but argues that the $500.00 award for loss of the vehicle is excessive.

. See South Central Bell Tel. Co. v. Branch, 360 So.2d 271 (La.App. 4th Cir. 1978); Robichaux v. Cade, 357 So.2d 849 (La.App. 4th Cir. 1978); Calecas v. Great Atlantic and Pacific Tea Co., Inc., 330 So.2d 619 (La.App. 4th Cir. 1976); Breckenridge v. Parker, 310 So.2d 124 (La.App. 4th Cir. 1975), writ refused, 313 So.2d 828 (La. 1975); Stoltz v. Continental Insurance Company, 231 So.2d 443 (La.App. 4th Cir. 1970); Henry v. Travelers Ins. Co., 398 So.2d 7 (La.App. 3d Cir. 1980); Lair v. Electric Mutual Insurance Company, 320 So.2d 262 (La.App. 3d Cir. 1975); Dupre v. South Central Bell Telephone Company, 318 So.2d 145 (La.App. 3d Cir. 1975); McDonald v. Fidelity & Casualty Co. of New York, 317 So.2d 267 (La.App. 3d Cir. 1975); Garrison v. State, Through Dept. of Highways, 401 So.2d 528 (La.App. 2d Cir. 1981); Mizell v. State, Through La. Dept. of Hwys., 398 So.2d 1136 (La.App. 1st Cir. 1981); Givens v. T & M Fertilizer Co., 340 So.2d 1057 (La.App. 1st Cir. 1976); O'Neal v. Southern Farm Bureau Insurance Co., 325 So.2d 887 (La.App. 1st Cir. 1976); Levron v. Dupre, 307 So.2d 107 (La.App. 1st Cir. 1975), writ granted, 310 So.2d 838 (La.1975), writ vacated 316 So.2d 395 (La.1975).